Enrique Bahena
NAME
J-67271
PRISON NUMBER

P.O. Box 901
CURRENT ADDRESS OR PLACE OF CONFINEMENT

Imperial, CA 92251
CITY, STATE, ZIP CODE

2254 ✓ 1983
FILING FEE PAID
Yes ___ No ✓
IFP MOTION FILED
Yes ✓ No ___
COPIES SENT TO
Court ✓ ProSe ___

FILED
2008 FEB -4 PM 3:59
CLERK US DISTRICT COURT
SOUTHERN DISTRICT OF CALIFORNIA
BY RM DEPUTY

# UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF CALIFORNIA

Enrique Bahena,
(FULL NAME OF PETITIONER)

PETITIONER

v.

Victor M. Almager, Warden,
(NAME OF WARDEN, SUPERINTENDENT, JAILOR, OR AUTHORIZED PERSON HAVING CUSTODY OF PETITIONER [E.G., DIRECTOR OF THE CALIFORNIA DEPARTMENT OF CORRECTIONS])

RESPONDENT

and

Jerry Brown.,
The Attorney General of the State of California, Additional Respondent.

Civil No. '08 CV 0214 H JMA
(TO BE FILLED IN BY CLERK OF U.S. DISTRICT COURT)

PETITION FOR WRIT OF HABEAS CORPUS

UNDER 28 U.S.C. § 2254
BY A PERSON IN STATE CUSTODY

1. Name and location of the court that entered the judgment of conviction under attack: Superior Court of California for San Diego County
2. Date of judgment of conviction: March 11, 2005
3. Trial court case number of the judgment of conviction being challenged: SCE 242240
4. Length of sentence: 14 years

5. Sentence start date and projected release date: March 11, 2005; the year 2016.

6. Offense(s) for which you were convicted or pleaded guilty (all counts): Residential burglary (Penal Code §459); Vandalism greater than $400 (Penal Code §594); Prison prior (Penal Code §667.5; Strike prior (Penal Code §§667, 1170.12).

7. What was your plea? (CHECK ONE)
   (a) Not guilty ☒
   (b) Guilty ☐
   (c) Nolo contendere ☐

8. If you pleaded not guilty, what kind of trial did you have? (CHECK ONE)
   (a) Jury ☒
   (b) Judge only ☐

9. Did you testify at the trial?
   ☒ Yes ☐ No

**DIRECT APPEAL**

10. Did you appeal from the judgment of conviction in the **California Court of Appeal**?
   ☒ Yes ☐ No

11. If you appealed in the **California Court of Appeal**, answer the following:
   (a) Result: Affirmed.
   (b) Date of result, case number and citation, if known: August 16, 2006, Case Number D046076
   (c) Grounds raised on direct appeal: Insufficiency of evidence; Ineffective assistance of counsel.

12. If you sought further direct review of the decision on appeal by the **California Supreme Court** (e.g., a Petition for Review), please answer the following:
   (a) Result: Denied.
   (b) Date of result, case number and citation, if known: November 1, 2006, Case Number S146929
   (c) Grounds raised: Same as above (11(c).

13. If you filed a petition for certiorari in the **United States Supreme Court**, please answer the following with respect to that petition:

(a) Result: None

(b) Date of result, case number and citation, if known: None

(c) Grounds raised: None

## COLLATERAL REVIEW IN STATE COURT

14. Other than a direct appeal from the judgment of conviction and sentence, have you previously filed any petitions, applications, or motions (e.g., a Petition for Writ of Habeas Corpus) with respect to this judgment in the **California Superior Court**?

☒ Yes ☐ No

15. If your answer to #14 was "Yes," give the following information:

(a) **California Superior Court** Case Number: EHC 592

(b) Nature of proceeding: Petition for writ of habeas corpus.

(c) Grounds raised: Imposition of sentence violated right to jury trial based on factual finding not submitted to jury.

(d) Did you receive an evidentiary hearing on your petition, application or motion?

☐ Yes ☒ No

(e) Result: Denied.

(f) Date of result: July 26, 2007.

16. Other than a direct appeal from the judgment of conviction and sentence, have you previously filed any petitions, applications, or motions (e.g., a Petition for Writ of Habeas Corpus) with respect to this judgment in the **California Court of Appeal**?

☐ Yes ☒ No

**17.** If your answer to #16 was "Yes," give the following information:

(a) **California Court of Appeal** Case Number: None

(b) Nature of proceeding: __________

(c) Grounds raised: __________

(d) Did you receive an evidentiary hearing on your petition, application or motion?
☐ Yes ☐ No

(e) Result: __________

(f) Date of result: __________

**18.** Other than a direct appeal from the judgment of conviction and sentence, have you previously filed any petitions, applications, or motions (e.g., a Petition for Writ of Habeas Corpus) with respect to this judgment in the **California Supreme Court**?
☐ Yes ☒ No

**19.** If your answer to #18 was "Yes," give the following information:

(a) **California Supreme Court** Case Number: n/a

(b) Nature of proceeding: __________

(c) Grounds raised: __________

(d) Did you receive an evidentiary hearing on your petition, application or motion?

☐ Yes ☐ No

(e) Result: __________

(f) Date of result: __________

20. If you did ***not*** file a petition, application or motion (e.g., a Petition for Review or a Petition for Writ of Habeas Corpus) with the **California Supreme Court**, containing the grounds raised in this federal Petition, explain briefly why you did not:

n/a

## COLLATERAL REVIEW IN FEDERAL COURT

21. Is this your **first** federal petition for writ of habeas corpus challenging this conviction?
☒ Yes ☐ No (IF "YES" SKIP TO #22)
   (a) If no, in what federal court was the prior action filed? ____
      (i) What was the prior case number? ____
      (ii) Was the prior action (CHECK ONE):
         ☐ Denied on the merits?
         ☐ Dismissed for procedural reasons?
      (iii) Date of decision: ____
   (b) Were any of the issues in this current petition also raised in the prior federal petition?
      ☐ Yes ☐ No
   (c) If the prior case was denied on the merits, has the Ninth Circuit Court of Appeals given you permission to file this second or successive petition?
      ☐ Yes ☐ No

**CAUTION:**

- **Exhaustion of State Court Remedies:** In order to proceed in federal court you must ordinarily first exhaust your state court remedies as to each ground on which you request action by the federal court. This means that even if you have exhausted some grounds by raising them before the California Supreme Court, you must first present ***all*** other grounds to the California Supreme Court before raising them in your federal Petition.
- **Single Petition:** If you fail to set forth all grounds in this Petition challenging a specific judgment, you may be barred from presenting additional grounds challenging the same judgment at a later date.
- **Factual Specificity:** You must state facts, not conclusions, in support of your grounds. For example, if you are claiming incompetence of counsel you must state facts specifically setting forth what your attorney did or failed to do. A rule of thumb to follow is — state who did exactly what to violate your federal constitutional rights at what time or place.

## GROUNDS FOR RELIEF

22. **State *concisely* every ground on which you claim that you are being held in violation of the constitution, law or treaties of the United States. Summarize *briefly* the facts supporting each ground.** If necessary, you may attach pages stating additional grounds and/or facts supporting each ground.

(a) **GROUND ONE**: THERE IS INSUFFICIENT EVIDENCE TO SUPPORT PETITIONER'S CONVICTION FOR RESIDENTIAL BURGLARY IN VIOLATION OF HIS DUE PROCESS RIGHTS GUARANTEED BY THE FIFTH AND FOURTEENTH AMENDMENTS TO THE U.S. CONSTITUTION

**Supporting FACTS** (state *briefly* without citing cases or law) The prosecution's case against petitioner was based almost entirely on the testimony of one witness - Deputy Richard Phillips. Phillips responded to a dispatch regarding a possible break-in at 2537 Gladiola Drive in Campo, California. (RT 37.) He arrived at the residence at approximately 9:30 a.m. and was met by Mr. and Mrs. Ward. (RT 37.) The Wards told him that the inside of the house was "trashed." They also pointed out a sledgehammer sitting nearby that had apparently been used to destroy the home's rock walkway, which had been under destruction. (People's Exhibit 2; RT 38, 64.)

Though the Wards indicated that they owned the property they did not live there. Their daughter, Cheryl Ward, lived there but she was out. They attempted to contact her and Deputy Phillips waited with the Wards for about 10 minutes before giving them his business card, asking them to call him when Cheryl got home. (RT 39.) When Phillips returned sometime between 1:00 and 2:00 p.m. Cheryl and her parents were there, as was Cheryl's friend, Kasey Haynes. (RT 40.) The deputy entered the residence and witnessed what he characterized as "complete destruction."

There was extensive damage to the furniture, appliances, and personal belongings as was described in depth by Phillips.

Phillips interviewed Cheryl alone in the living room. (RT 45-46.) She told him that she used to live with petitioner, but that he had

(cont. on next)

**Did you raise GROUND ONE in the California Supreme Court?**
☒ Yes ☐ No.

Supporting facts (continued):

recently moved out of the residence, and was neither receiving mail, nor keeping any clothes there. (RT 115.) The only items belonging to petitioner that had been left in the house were a table, chairs, and bed, which Cheryl had just learned had been located at the home of her friend Crystal Weldy, which was one street over. (RT 46-47.) When the officer asked whom she thought might be responsible, Cheryl replied, "Isn't is obvious, there's nobody else?" implying that it was petitioner. (RT 278, 280) The deputy then drove to Cheryl's house, where a truck registered to petitioner and Cheryl was parked. The furniture Cheryl previously described was sitting near the truck. (People's Exhibit 11; RT 47-49; 83-84.)

When the deputy returned to the Gladiola residence, Cheryl told him that she wanted to go to Crystal's to pick up her dog. (RT 49.) The deputy followed Cheryl to Crystal's house, where he observed a new vehicle was parked outside, that had not been there earlier. Two males walked out from the house toward Cheryl, and told her "He's not here. He left with Loni." (RT 49.) Cheryl gathered her dog and went back to her car. The deputy asked Crystal's husband if he had seen petitioner. The husband indicated petitioner was upstairs, inside the residence. The deputy walked inside and started calling for petitioner "to come out with his hands up" (RT 50-51.) Eventually, petitioner was found downstairs behind a locked door. (RT 52.) The deputy handcuffed petitioner, but allowed him a brief conversation with Cheryl, before transferring him to the sheriff's substation. (RT 54.)

Deputy Phillips testified that petitioner initially claimed he did not know what had happened to the Gladiola residence. (RT 91.) According to the deputy, petitioner told him that earlier that morning he had gone to see a friend named Danny Guerrero, who lived in a separate living quarters attached to the main Gladiola residence. Cheryl's parents were standing

outside the house when he arrived. When Cheryl's mother told him the house had been "destroyed", petitioner responded that he did not know what happened, and that he had not lived in the house for two months. Petitioner had then continued on his way. (RT 55.)

The deputy then testified that he told petitioner that he knew he was lying because Crystal Weldy had told everyone that he had brought Cheryl's dog to her residence. (RT 56.) According to the deputy, petitioner changed his story and now claimed that yes he had taken the dog from the side area outside the residence, but that he still had no idea about any vandalism that had transpired inside. (RT 56.) Petitioner also claimed that he had actually taken the furniture items found outside the Weldy residence several days earlier. (RT 56.)

At that point the deputy lied and told petitioner that witnesses had heard the house being destroyed the night before, and had reported seeing petitioner loading the furniture onto his truck. (RT 56.) According to the deputy, petitioner then admitted he had taken the property out of the residence the night before, whild committing the vandalism. (RT 56, 101.) Appellant then explained the extent of his relationship with Cheryl, telling the deputy that he had moved out of the Gladiola residence after the couple decided to take some time apart from dating.

Petitioner told the deputy that neither he nor Cheryl was supposed to date anybody else. (RT 57, 282.) However, the night of the incident, a friend named Loni had telephoned petitioner and told him that he had seen Cheryl with another man at a bar called the Flinn Springs Inn. (RT 57-58.) The news upset petitioner, so he called Cheryl and asked her where she was. Cheryl told him that she had just left the PB Bar & Grill in Pacific Beach. Petitioner told her that he knew she was lying because Loni had told him that he had just seen her at the Flinn Springs Inn. Petitioner continued

to question Cheryl regarding her whereabouts and activities that evening, but she refused to answer. (RT 58.)

Petitioner said he was so angry at the situation that he went to the Gladiola residence and vandalized it. He then asked the deputy how much damage there was to the house. (RT 59-60, 107.) When the deputy commented "They're going to bring out a plumber because ... [of] what you did to the drains and what have you," petitioner responded "I only threw three rolls of toilet paper in there, and I didn't flush them. There's not that much damage." (RT 61.) Petitioner told the deputy that somebody helped him vandalize the house, but he would not give up the other person's name. (RT 63.)

Cheryl Ward also testified as a witness called by the People. She testified that she and petitioner had begun dating in May, 2003. She and petitioner had moved into the Gladiola residence later that fall. (RT 127, 223.) At the time of the trial, Cheryl and petitioner had been married for five months, and she was living with petitioner's parents in Boulevard. (RT 127.) According to Cheryl, the TV and computer destroyed in the vandalism belonged to her, but the rest of the entertainment center was a "mixture." (RT 132.) Petitioner had "supplied the majority of the bedroom furniture" including the bed and dresser. (RT 132-133.) The couple had bought other bedroom items together, like the mirror and wall hangings. (RT 134.)

In May 2004, Ward began to re-evaluate her relationship with petitioner because she was a teacher and wanted petitioner, who worked in a family-run restaurant and liquor store, to have a career also. (RT 130, 244-245, 247.) Sometimes, when the couple would get into an argument, petitioner would go to a friend or relative's house for a day or two, while Cheryl would stay at the residence. (RT 131, 245.) However, Cheryl initially

claimed that at the time of the incident, her relationship to petitioner was "fine", that there were "no problems", and that she and petitioner were living together at the Gladiola residence. (RT 135.)

On the evening in question, Cheryl left the residence, which was in "fine" condition, to go to the Pine Valley Days festival with her friend Kasey Haynes and Haynes' sister. (RT 134-137, 156.) She eventually left the festival alone, after receiving a phone call from a man named Chris Deerling, informing her that he and his friends were at the Flinn Springs Inn. (RT 138-139, 254.) While hanging out with Deerling at "the Flinn", Cheryl spotted petitioner's friend Loni. (RT 141, 195.) She felt "caught and bad" and felt she had "messed up". (RT 224.) She asked Loni not to tell petitioner that he had seen her. (RT 141, 196.)

Soon thereafter, Cheryl received a cell phone call from petitioner. (RT 142.) He asked Cheryl in a worried voice where she was and whom she was with. (RT 142-143, 196.) Cheryl told petitioner that she was at a bar in Pacific Beach. However, petiioner knew she was lying because he had just spoken with Loni. The call turned into an argument. (RT 145.) Petitioner told Cheryl that he loved her, that he was really hurt by her actions. He told her that he was going to take his stuff and vacate the Gladiola residence. (RT 145, 148.) About an hour and a half after receiving petitioner's call, Cheryl received a phone call from an unrecognized muffled voice telling her, "you're dead." (RT 145-147, 199.)

Cheryl went home with Deerling that evening. (RT 144, 150, 151.) The next morning, while still at Deerling's, she received a telephone call from her parents, telling her that they were very mad, and that she needed to come home right away. (RT 151-152, 158.) Cheryl assumed her father was going to yell at her because the puppy, which she and petitioner owned together, must have been left outside the whole night. (RT 154, 156.)

Assuming her father would not yell at her in front of her friend, Cheryl pick up Kasey before returning to the Gladiola residence. (RT 152, 159.)

Cheryl went inside the house and saw the damage. (RT 162.) Deputy Phillips arrived at the residence about 20 minutes later and the two walked through the house together. (RT 162, 177.) She felt embarrassed answering the deputy's questions "because it's a small town, and I didn't want anyone to find out about it." (RT 179, 183.) Cheryl claimed she had no idea who would have wanted to vandalize her house. (RT 183.)

Cheryl admitted telling Deputy Phillips that although she and petitioner were still boyfriend/girlfriend at the time of the incident, that they were having problems, and that he had moved out in early June in order for the couple to reevaluate their relationship. However, she clarified that statement as meaning she definitely considered petitioner as still residing at the house, since she had misunderstood how the term "moving out" was understood by the deputy. (RT 192, 193, 221, 223.) According to Cheryl, petitioner still had clothes and furniture at the Gladiola residence at the time of the incident. (RT 224.) He was also still receiving mail there. (RT 224-225.)

Cheryl testified that Deputy Phillips had come out and spoken to her three times to four times a week between petitioner's arrest and the preliminary hearing. The deputy would lecture her in a loud voice and witn a pointed finger that petitioner was a bad person and that her life would turn out poorly if she stayed with him. (RT 233-234, 264, 270.) He also told her that people would not want her teaching their children if they knew about her relationship with petitioner. (RT 233.) Cheryl felt harassed by the deputy and complained to the Sheriff's Department Internal Affairs division. She testified that the deputy had threatened to arrest her for perjury after she testified at the preliminary hearing.

(b) **GROUND TWO**: Ineffective assistance of trial counsel

**Supporting FACTS** (state *briefly* without citing cases or law): Prior to Petitioner taking the stand in his own defense, the prosecution before trial jurors, encroached into Petitioner's past criminal history. Evenmoreso, the encroachment into Petitioner's past was elicited by Petitioner's trial counsel. The trial judge became disturbed at the amount of evidence on the topic of Petitioner's prior criminal history that the court sua sponte cautioned the jury with regards to Petitioner's criminal record, criminal history that was being presented before them [the jury], and that the jury wasn't to use [Petitioner's criminal record/history] for all the purposes the judge explained to the jury (RT p.257). Petitioner submits that testimony caused the jury to prematurely consider Petitioner a liar, unworthy of belief before Petitioner took the stand in his own defense. After jurors had already heard about Petitioner's past record and criminal history, then and only then did defense counsel lodge his objection on relevance grounds, and even after the trial court "overruled the objection," the court noted its concern to such questioning with regards to Petitioner's "right to a fair trial" RT pp.218,220).

Defense counsel failed to provide Petitioner with effective assistance as guaranteed under the Sixth and Fourteenth Amendments to the United States Constitution.

**Did you raise GROUND TWO in the California Supreme Court?**

☒ Yes ☐ No.

23. Do you have any petition or appeal **now pending** in any court, either state or federal, pertaining to the judgment under attack?
☐ Yes ☒ No

24. If your answer to #23 is "Yes," give the following information:
(a) Name of Court: n/a
(b) Case Number: ________
(c) Date action filed: ________
(d) Nature of proceeding: ________
(e) Grounds raised: ________
(f) Did you receive an evidentiary hearing on your petition, application or motion?
☐ Yes ☐ No

25. Give the name and address, if known, of each attorney who represented you in the following stages of the judgment attacked herein:
(a) At preliminary hearing: Gerald E. Smith, Steigerwalt & Associates, 3555 Fourth Ave., San Diego, CA 92103
(b) At arraignment and plea: Same as (a).
(c) At trial: Same as (a).
(d) At sentencing: Same as (a).
(e) On appeal: Mark S. Devore, 18662 MacArthur Blvd. #200, Irvine, CA 92612.
(f) In any post-conviction proceeding: None
(g) On appeal from any adverse ruling in a post-conviction proceeding: None

**26.** Were you sentenced on more than one count of an indictment, or on more than one indictment, in the same court and at the same time?
☐ Yes ☒ No

**27.** Do you have any future sentence to serve after you complete the sentence imposed by the judgment under attack?
☐ Yes ☒ No

(a) If so, give name and location of court that imposed sentence to be served in the future:
________________________________________

(b) Give date and length of the future sentence: ____________________
________________________________________

(c) Have you filed, or do you contemplate filing, any petition attacking the judgment which imposed the sentence to be served in the future?
☐ Yes ☐ No

**28.** Date you are mailing (or handing to a correctional officer) this Petition to this court: ________
________________________________________

Wherefore, Petitioner prays that the Court grant Petitioner relief to which he may be entitled in this proceeding.

None
SIGNATURE OF ATTORNEY (IF ANY)

I declare under penalty of perjury that the foregoing is true and correct. Executed on

JAN /30 /2008 — Enrique Bohena [signature]
(DATE) — SIGNATURE OF PETITIONER

VERIFICATION

STATE OF CALIFORNIA ) On this day, Listed Court Pleadings Were Given
COUNTY OF IMPERIAL ) To Prison Official For Filing/Mailing
( C.C. P. §446 & 2015.5; 28 U.S.C. §1746

I, Enrique Bahena, declare under penalty of perjury that: I am the petitioner in the above-entitled action; I have read the foregoing documents and know the contents thereof; and the same is true of my own knowledge except as to matters stated therein upon information and belief, and as to those matters, I believe they are true:

Executed this 30th day of January, 2008, at Centinela State Prison, P.O. Box 901, Imperial, CA 92251

[Signature] ______________________.
DECLARANT/PRISONER

****************************************

PROOF OF SERVICE BY MAIL

( C.C.P. Sec. §1013 (a) & 2015.5; 28 U.S.C. Sec.§1746.)

I, Enrique Bahena, am a resident of Centinela State Prison, in the County of Imperial, State of California; I am over the age of eighteen (18) years and am a party of the above-entitled action. My state prison address is:

P.O. Box 901, Imperial, CA 92251.

On January 30, 2008 I served the foregoing:

Petition for writ of habeas corpus

(Set forth the exact title of document (s) served.)

on the part (s) herein by placing a true copy (s) thereof, enclosed in a sealed envelope (s), with postage thereon fully paid, in the United States Mail, in a deposit box so provided at Centinela State Prison, P.O.Box 901, Imperial, CA 92251, addresses:

Clerk of U.S. District Court
Room 4290
880 Front Street
San Diego, CA 92101

There is delivery service by United States Mail at the so addressed, and/or there is regular communication by mail between the place of mailing and the place so addressed. I declare under penalty of perjury that the foregoing is true and correct.

Dated: January 30, 2008

Enrique Bahena
DECLARANT/PRISONER

JS44
(Rev. 07/89)

# CIVIL COVER SHEET

The JS-44 civil cover sheet and the information contained herein neither replace nor supplement the filing and service of pleadings or other papers as required by law, except as provided by local rules of court. This form, approved by the Judicial Conference of the United States in September 1974, is required for the use of the Clerk of Court for the purpose of initiating the civil docket sheet. (SEE INSTRUCTIONS ON THE SECOND PAGE OF THIS FORM.)

2254 DEFENDANTS 1983
FILING FEE PAID Yes ___ No ✓
IFP MOTION FILED Yes ✓ No
COPIES SENT TO Court ✓ Pro Se

FILED
2008 FEB -4 PM 3:59
CLERK US DISTRICT COURT
SOUTHERN DISTRICT OF CALIFORNIA
BY [signature] DEPUTY

I (a) PLAINTIFFS

**Enrique Bahena**

DEFENDANTS

**Almager, et al**

(b) COUNTY OF RESIDENCE OF FIRST LISTED PLAINTIFF Imperial
(EXCEPT IN U.S. PLAINTIFF CASES)

COUNTY OF RESIDENCE OF FIRST LISTED DEFENDANT
(IN U.S. PLAINTIFF CASES ONLY)

NOTE: IN LAND CONDEMNATION CASES, USE THE LOCATION OF THE TRACT OF LAND

(c) ATTORNEYS (FIRM NAME, ADDRESS, AND TELEPHONE NUMBER)

**Enrique Bahena**
**PO Box 901**
**Imperial, CA 92251**
**J-67271**

ATTORNEYS (IF KNOWN)

**'08 CV 0214 H JMA**

II. BASIS OF JURISDICTION (PLACE AN x IN ONE BOX ONLY)

- ☐ 1 U.S. Government Plaintiff
- ☒ 3 Federal Question (U.S. Government Not a Party)
- ☐ 2 U.S. Government Defendant
- ☐ 4 Diversity (Indicate Citizenship of Parties in Item III

III. CITIZENSHIP OF PRINCIPAL PARTIES (PLACE AN X IN ONE BOX FOR PLAINTIFF AND ONE BOX FOR DEFENDANT (For Diversity Cases Only)

| | PT | DEF | | PT | DEF |
|---|---|---|---|---|---|
| Citizen of This State | ☐ 1 | ☐ 1 | Incorporated or Principal Place of Business in This State | ☐ 4 | ☐ 4 |
| Citizen of Another State | ☐ 2 | ☐ 2 | Incorporated and Principal Place of Business in Another State | ☐ 5 | ☐ 5 |
| Citizen or Subject of a Foreign Country | ☐ 3 | ☐ 3 | Foreign Nation | ☐ 6 | ☐ 6 |

IV. CAUSE OF ACTION (CITE THE US CIVIL STATUTE UNDER WHICH YOU ARE FILING AND WRITE A BRIEF STATEMENT OF CAUSE. DO NOT CITE JURISDICTIONAL STATUTES UNLESS DIVERSITY).

**28 U.S.C. 2254**

V. NATURE OF SUIT (PLACE AN X IN ONE BOX ONLY)

CONTRACT
- ☐ 110 Insurance
- ☐ Marine
- ☐ Miller Act
- ☐ Negotiable Instrument
- ☐ 150 Recovery of Overpayment &Enforcement of Judgment
- ☐ 151 Medicare Act
- ☐ 152 Recovery of Defaulted Student Loans (Excl. Veterans)
- ☐ 153Recovery of Overpayment of Veterans Benefits
- ☐ 160 Stockholders Suits
- ☐ Other Contract
- ☐ 195 Contract Product Liability

REAL PROPERTY
- ☐ 210 Land Condemnation
- ☐ 220 Foreclosure
- ☐ 230 Rent Lease & Eiectmant
- ☐ 240 Tort to Land
- ☐ 245 Tort Product Liability
- ☐ 290 All Other Real Property

TORTS

PERSONAL INJURY
- ☐ 310 Airplane
- ☐ 315 Airplane Product Liability
- ☐ 320 Assault, Libel & Slander
- ☐ 330 Federal Employers' Liability
- ☐ 340 Marine
- ☐ 345 Marine Product Liability
- ☐ 350 Motor Vehicle
- ☐ 355 Motor Vehicle Product Liability
- ☐ 360 Other Personal Injury

PERSONAL INJURY
- ☐ 362 Personal Injury- Medical Malpractice
- ☐ 365 Personal Injury - Product Liability
- ☐ 368 Asbestos Personal Injury Product Liability

PERSONAL PROPERTY
- ☐ 370 Other Fraud
- ☐ 371 Truth in Lending
- ☐ 380 Other Personal Property Damage
- ☐ 385 Property Damage Product Liability

CIVIL RIGHTS
- ☐ 441 Voting
- ☐ 442 Employment
- ☐ 443 Housing/Accommodations
- ☐ 444 Welfare
- ☐ 440 Other Civil Rights

PRISONER PETITIONS
- ☐ 510 Motions to Vacate Sentence Habeas Corpus
- ☒ 530 General
- ☐ 535 Death Penalty
- ☐ 540 Mandamus & Other
- ☐ 550 Civil Rights

FORFEITURE/PENALTY
- ☐ 610 Agriculture
- ☐ 620 Other Food & Drug
- ☐ 625 Drug Related Seizure of Property 21 USC881
- ☐ 630 Liquor Laws
- ☐ 640 RR & Truck
- ☐ 650 Airline Regs
- ☐ 660 Occupational Safety/Health
- ☐ 690 Other

LABOR
- ☐ 710Fair Labor Standards Act
- 720 Labor/Mgmt. Relations
- ☐ 730 Labor/Mgmt. Reporting & Disclosure Act
- ☐ 740 Railway Labor Act
- ☐ 790 Other Labor Litigation
- ☐ 791 Empl. Ret. Inc.
- ☐ Security Act

BANKRUPTCY
- ☐ 422 Appeal 28 USC 158
- ☐ 423 Withdrawal 28 USC 157

PROPERTY RIGHTS
- ☐ 820 Copyrights
- ☐ 830 Patent
- ☐ 840 Trademark

SOCIAL SECURITY
- ☐ 861 HIA (13958)
- ☐ 862 Black Lung (923)
- ☐ 863 DIWC/DIWW (405(g))
- ☐ 864 SSID Title XVI
- ☐ 865 RSI (405(g))

FEDERAL TAX SUITS
- ☐ 870 Taxes (U.S. Plaintiff or Defendant)
- ☐ 871 IRS - Third Party 26 USC 7609

OTHER STATUTES
- ☐ 400 State Reappointment
- ☐ 410 Antitrust
- ☐ 430 Banks and Banking
- ☐ 450 Commerce/ICC Rates/etc.
- ☐ 460 Deportation
- ☐ 470 Racketeer Influenced and Corrupt Organizations
- ☐ 810 Selective Service
- ☐ 850 Securities/Commodities Exchange
- ☐ 875 Customer Challenge 12 USC
- ☐ 891 Agricultural Acts
- ☐ 892 Economic Stabilization Act
- ☐ 893 Environmental Matters
- ☐ 894 Energy Allocation Act
- ☐ 895 Freedom of Information Act
- ☐ 900 Appeal of Fee Determination Under Equal Access to Justice
- ☐ 950 Constitutionality of State
- ☐ 890 Other Statutory Actions

VI. ORIGIN (PLACE AN X IN ONE BOX ONLY)

☒ 1 Original Proceeding ☐ 2 Removal from State Court ☐ 3 Remanded from Appelate Court ☐ 4 Reinstated or Reopened ☐ 5 Transferred from another district (specify) ☐ 6 Multidistrict Litigation ☐ 7 Appeal to District Judge from Magistrate Judgment

VII. REQUESTED IN COMPLAINT: ☐ CHECK IF THIS IS A CLASS ACTION UNDER f.r.c.p. 23 DEMAND $ Check YES only if demanded in complaint: JURY DEMAND: ☐ YES ☐ NO

VIII. RELATED CASE(S) IF ANY (See Instructions): JUDGE Docket Number

DATE February 4, 2008 ~~SIGNATURE OF ATTORNEY OF RECORD~~ [signature]

CR